**U.S. BANKRUPTCY COURT**
**District of South Carolina**

Case Number: **11-00095-dd**

### ORDER DENYING CONFIRMATION OF CHAPTER 12 PLAN

The relief set forth on the following pages, for a total of 6 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**05/24/2011**



_[signature]_

David R. Duncan
US Bankruptcy Judge
District of South Carolina

Entered: 05/25/2011

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| IN RE: | C/A No. 11-00095-DD |
| Steven Rhett Sandifer and<br>Cynthia M. Sandifer, | Chapter 12 |
| | **ORDER DENYING CONFIRMATION** |
| Debtors. | |

This matter is before the Court for confirmation of Steven Rhett Sandifer and Cynthia M. Sandifer's ("Debtors") Amended Chapter 12 Plan ("Plan") filed May 5, 2011. Objections to confirmation of Debtors' Plan were filed by the chapter 12 trustee ("Trustee") on May 12, 2011 and AgSouth Farm Credit, ACA ("AgSouth") on May 18, 2011. A hearing was held on May 19, 2011. At the conclusion of the hearing, the Court took the matter under advisement for further consideration. Pursuant to Federal Rule of Civil Procedure 52, which is made applicable to this matter by Federal Rules of Bankruptcy Procedure 7052 and 9014(c), the Court now makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

Debtors filed for chapter 12 protection on January 6, 2011. Mr. Sandifer conducts a farming operation with his son, Steven Jeffrey Sandifer, who also filed a chapter 12 bankruptcy case on January 6, 2011. Steven Jeffrey Sandifer and Mr. Sandifer ("the Sandifers") operate their farming operation on several hundred acres of farmland, part of which is owned by one or both of the Sandifers, and part of which is leased. The Sandifers plant several crops on the farmland and also operate a breeder poultry operation under a contract with Amick Farms.

In January 2008, the Sandifers formed a limited liability company for their farming operation in the name of Sandifer & Son Farms, LLC ("LLC"). Prior to the formation of this entity, the Sandifers did business under their individual names or under the name Sandifer & Son

Farms. Following the formation of the LLC, farm income was reported by the LLC, but was held in a bank account in the Sandifers' names. In 2008, the LLC had gross income of $588,045 and expenses of $727,136. In 2009, gross income totaled $481,380 and expenses totaled $555,548. The LLC made $193,683.57 of debt payments on behalf of the Sandifers in 2008 and $94,904.57 of debt payments on the Sandifers' behalf in 2009. Steven Jeffrey Sandifer created projections for 2011 which predict that the LLC will earn $711,394 in gross income and after operating expenses, will be left with net income of $471,644. The projected crop mix and land usage for 2011 is substantially different from past years, but Steven Jeffrey Sandifer testified that the Sandifers did not anticipate any substantial changes to their farming operation for the next several years. The Sandifers propose to set aside $240,000 at the end of 2011 to be held as a reserve going forward. This amount is approximately the amount of the Sandifers' yearly operating expenses.

      Debtors' Schedule D discloses a total of $1,073,682.10 in secured debt, consisting entirely, with the exception of a lien on a 2007 Mercury Mountaineer, of mortgages on Debtors' farmland and residence and security interests in crops and farm equipment. Debtors' Schedule F shows $371,438.23 of unsecured debt. Independent of any farm income, Debtors earn net monthly income of $5,137.03 from Mr. Sandifer's retirement income from SCANA and Mrs. Sandifer's income as a teacher in Barnwell County. Debtors' Schedule J shows monthly expenses of $5,807.95, leaving Debtors with negative disposable income of $670.92 per month. No income from the LLC is listed on Debtors' Schedules. At the confirmation hearing, Debtors indicated that an Amended Schedule J had been prepared which excluded their residential mortgage and automobile payments, which are addressed in Debtors' Plan. However, as of the date of this Order, that Schedule J had not been filed.

Debtors' Plan provides for monthly payments of $1,453.88 for 60 months beginning May 1, 2011. In addition, Debtors propose to make annual payments of $89,000 for five years. Mr. Sandifer testified at the confirmation hearing that the monthly payments would be paid from Debtors' non-farm income, and that the annual payments would be paid using distributions to Mr. Sandifer from the LLC. Debtors also indicated at the hearing that a modified plan had been prepared and had not yet been filed, but had been provided to Trustee.

## CONCLUSIONS OF LAW

11 U.S.C. § 1225 sets forth several requirements that must be met before a debtor's chapter 12 plan can be confirmed. Trustee's only objection to Debtors' Plan is that it fails to commit all available disposable income to pay creditors. This objection is apparently cured in the yet to be filed modified plan agreed to by Trustee and Debtors. AgSouth's objections were many, but mostly related to the Plan's failure to provide creditors with sufficient information and its failure to commit all disposable income to pay creditors. AgSouth was not provided a copy of the modified plan prior to the confirmation hearing; as a result, the Court is uninformed as to whether that plan cures AgSouth's objections.

The unfiled modified plan is not currently before the Court and therefore that plan cannot be considered. With respect to the Plan before the Court, the Court finds that confirmation should be denied. It appears from the testimony and the evidence submitted at the hearing that the LLC's income projections are reasonable and that Debtors have sufficient income to make all plan payments. However, AgSouth and Trustee's objections raise concerns about the Plan which the Court finds to be well-founded and which prevent confirmation of the present Plan.

First, it appears that Debtors are failing to commit all disposable income to their Plan, as required by section 1225(b)(1)(B).[1] The Sandifers propose to set aside $240,000 from the LLC's net income of $471,644 for reserves. This is approximately the amount of the LLC's operating expenses for 2012. Steven Jeffrey Sandifer testified at the confirmation hearing that, except for market changes in price, projections for future years were likely to be similar to the 2011 projections. If this is in fact the case, then each year the Sandifers should earn enough gross income to satisfy their operating expenses and still have a significant amount of money left to pay their creditors. While the Bankruptcy Code allows a debtor to hold some amount of money in reserves to pay future operating expenses,[2] in the absence of any evidence that an amount equal to the entire amount of yearly operating expenses is necessary for the continuation of the farming operation, the Court finds that this proposed retention is excessive. *See In re Coffman*, 90 B.R. 878, 885–86 (Bankr. W.D. Tenn. 1988) ("The Court is mindful that the debtors should not accumulate an unreasonably large reserve of funds which could be a windfall at the time of discharge. Neither should the debtors be unreasonably hindered from reaching their reorganizational goal."). Additionally, excluding the amount proposed to be set aside for reserves, it appears that the full amount of LLC distributions to Debtors is not being included in their plan payment. Under these circumstances, it appears that Debtors are not committing all disposable income to fund their Plan; as a result, their Plan does not meet the requirement of section 1225(b)(1)(B) and cannot be confirmed.

---

[1] 11 U.S.C. § 1225(b)(1)(B) provides: "If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan -- . . . (B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period, or such longer period as the court may approve under section 1222(c), beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

[2] *See* 11 U.S.C. § 1225(b)(2), which provides, "For purposes of this subsection, 'disposable income' means income which is received by the debtor and which is not reasonably necessary to be expended -- . . . (B) for the payment of expenditures necessary for the continuation, preservation, and operation of the debtor's business."

AgSouth's objections relating to the unclear and inadequate nature of information provided to creditors also appear to have merit. The 2011 monthly cash flow projections for the LLC presented at the hearing failed to include certain payments that the LLC will apparently make on Debtors' behalf, as well as certain debt service payments the LLC is required to make on its own obligation. At the confirmation hearing, an amended Schedule J showing Debtors' ability to make plan payments was presented; however, this Schedule J has not yet been filed with the Court.

At the confirmation hearing, Debtors' counsel indicated that a modified plan had been prepared and provided to Trustee. Debtors' counsel stated, and Trustee confirmed, that the modified plan resolved Trustee's objection. With respect to the issue of the proposal to reserve funds, Trustee proposed that the modified plan include language reserving the right of Trustee or any unsecured creditor to object to the amount of the reserve throughout the life of the plan. This would allow Debtors to initially reserve funds to use for the continuation of their farming operation, but would ensure that if such funds weren't necessary for that purpose, Trustee or creditors could object and ask the Court to require those funds be paid to Debtors' creditors. This may well satisfy the requirement of section 1225(b)(1)(B).

## CONCLUSION

For the reasons set forth above, the Court finds that Debtors' Plan does not meet the confirmation requirements of section 1225. Accordingly, confirmation of the Plan is denied. Debtors are instructed to file an amended plan within ten (10) days. That plan will then be set for a confirmation hearing.

AND IT IS SO ORDERED.